UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CT-3078-BO

| | | |
|---|---|---|
| KEITH JAMES SEARS,<br>Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | ORDER |
| UNITED STATES OF AMERICA, et al.,<br>Defendants. | )<br>)<br>) | |

On April 4, 2012, plaintiff, a state inmate acting pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. Compl., D.E. 1. In assessing the complaint under 28 U.S.C. § 1915, the court ordered Sears to amend his filing to clarify its confused and rambling nature. Order, D.E.19. Upon response, the court allowed the matter to proceed as to two claims: a claim of excessive force and deliberate indifference to serious medical needs arising therefrom. Order, D.E. 23. The alleged facts are as follows. On May 11, 2010, while at Central Prison, Sears was beaten by Officer Chavis and three John Doe officers.[1] Id. The same day, Sears contends he was threatened by Correctional Officer Alba and Captain White, which along with the assault, led Sears to refuse to be taken to the doctor for medical care, specifically a CAT scan. Id. Now before the court are several motions: plaintiff's motions for default judgment, plaintiff's motion for an extension of time, defendants' (Alba, Branker, Chavis, Mitchell, and Pickering) motion to dismiss, plaintiff's motion for leave to file excess pages, defendant Green's motion to dismiss,

---

[1] To facilitate this matter, the court requested the Attorney General, through DPS if necessary, to identify these three John Doe officers. Order, D.E. 47. On July 15, 2013, a response was filed which stated that an incident report on May 11, 2010, named the involved staff members as Correctional Officer Chavis, Correctional Officer Carleton Allen Green, Sergeant Willie Lee Mitchell, and Correctional Officer Dietrich Ray Moore. Response, D.E. 48. Thereafter, those individuals were named as defendants to the action. D.E. 49.

defendants' motion for protective order, a second motion of plaintiff's for leave to file excess pages, and plaintiff's motion for a temporary restraining order. D.E. 54, 68, 70, 73, 78, 84, 86, 91, 94, and 97.

Motions for Entry of Default and Extension of Time

Sears' motions for an entry of default and a motion for an extension of time were referred to Magistrate Judge Jones. Order, D.E. 74. As to those issues, Judge Jones entered an Order and Memorandum and Recommendation which allowed for the extension of time and denied the motions for default judgment. Id. Sears[2] filed an objection to the denial of the motions for default. D.E. 80. "The Federal Magistrates Act requires a district court to make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (alteration in original) (emphasis and quotation omitted). Absent a timely objection, "a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Id. (quotation omitted).

Given the objections to this part of the magistrate's order, the court holds the following. Rule 55 of the Federal Rules of Civil Procedure sets forth the process for obtaining a default judgment. "Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2682 (3d ed.). An entry of default

---

[2]The court continues to note the confused nature of Sears' filings. For example, Sears states he is before the court "through his councel [sic], Jesus Christ, pro se, who makes objection to the courts order and recommendation."

2

shall be made when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" as provided by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 55(a).

Entry of default pursuant to Federal Rule of Civil Procedure 55 is not proper in this case. No answer or response was due from defendants Chavis and Alba at the time plaintiff sought entry of default on September 6, 2013, and defendant Branker had sought an extension of time to answer or otherwise respond. Captain White had yet to be served when the motion was made. Likewise, Mitchell had not been served with the default motion and again entry of default is inappropriate. In addition, plaintiff has suffered no prejudice, and public policy strongly prefers that courts decide cases on the merits. See, e.g., Colleton Prep. Academy, Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417-21 (4th Cir. 2010). Thus, the requests for default are denied. D.E. 54, 68, 73.

Defendant Branker's motion for an extension of time was not objected to and is ALLOWED as addressed in the Order and Memorandum and Recommendation. D.E. 70.

Motions for Leave to File Excess Pages

Plaintiff Sears' motions for leave to file excess pages are ALLOWED. However, Sears appears to have filed the documents, thus, no additional time is provided to make more filings. DE. 84, and 94.

Defendants' Motions to Dismiss

    i.    Federal Rule of Civil Procedure 12(b)(6) Standard

The court next reviews defendants' motions to dismiss. Mot. to Dismiss, D.E. 78 and 86. In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure

3

for failure to state a claim upon which relief can be granted, a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 129 S. Ct. at 1949–50. In addition to the complaint, the court may consider documents integral to and explicitly relied on in the complaint if the plaintiff does not challenge their authenticity. Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). The court may also take judicial notice of matters of public record without converting a motion to dismiss into one for summary judgment. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

    ii.    <u>Medical care</u>

To establish an Eighth Amendment claim for denial of medical care, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even

4

a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotation omitted).

Deliberate indifference requires that a defendant knew of and purposefully ignored "an excessive risk to inmate health or safety . . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "[O]bduracy and wantonness, not inadvertence or error in good faith, . . . characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." Whitley v. Albers, 475 U.S. 312, 319 (1986). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241. "[T]o establish a claim of deliberate indifference to [a] medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). An inmate is not entitled to choose his course of treatment, see Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam), and mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

In support of defendants' motion to dismiss, they assert the following.

> Applying these principles, the first question must be whether Plaintiff has shown an objectively serious injury due to extreme neglect of serious medical needs. Plaintiff fails to do so. Plaintiff states that [he] was denied medical care by Defendant Chavis and other unknown staff following his alleged assault occurring on 10 May 2010. However, Plaintiff does not ever state that he actually suffered any injury whatsoever, nor does Plaintiff demonstrate that he requested a sick call for the treatment of any alleged ailments, in accordance with DPS-DAC policies and procedures regarding inmate medical care, which was rejected or ignored by any of the Defendants. Moreover, Plaintiff does not indicate, at any point, in his complaint, that any specific Defendant had any knowledge of any injury to Plaintiff

5

> or were employed in a capacity which rendered Defendants responsible for providing medical care to the Plaintiff.
>
> As to Defendant Alba, Plaintiff alleges that he declined medical treatment as the result of threats related to his assault. However, Plaintiff does not allege that he has suffered a diagnosed, actual serious injury or medical risk of harm of which Defendants were aware and disregarded. Thus, Plaintiff not only fails to show an extreme neglect of serious medical needs but also that he suffered any significant or serious injury as a result of any specific Defendants' conduct.

Mem. in Supp., D.E. 79, at 5 (citations omitted); see also Mem. in Supp., D.E. 87 (making identical argument).

In response to the motions, plaintiff makes many confusing and nonsensical arguments. However, the court understands the response to state that after the excessive force incident by officers Chavis, Green, Mitchell, and Moore (wherein plaintiff was beaten in the face, head, and kicked in the genitals), he was placed into a cell without receiving medical attention. D.E. 93 at 4. He also states that his wrists were cut and bleeding. Id. The officer defendants, along with Officer Alba and Captain White,[3] threatened to beat him "to his death" if "he came out of the camera cell." D.E. 85 at 9-10. Due to these threats, although additional medical attention was required, plaintiff was afraid to be taken to the hospital and given a CAT scan. D.E. 93 at 5. Plaintiff also states that he was not taken to the hospital until the next day, and he used the cotton inside the mattress to stop the bleeding. Id. at 6. Plaintiff also states that when he arrived at the hospital the following morning, he was given a CAT scan, and x-rays on his wrists and head were taken. Id.

At this juncture, material issues of both fact and law are in dispute as to the Officers Chavis, Green, Mitchell, Moore, Alba, and White. Defendants do not support their arguments

---

[3]The court is aware that "Captain White" has not been served and is not a movant.

6

with any supporting affidavits or medical records, or affidavits that in fact this incident did not occur as plaintiff alleges. The mere fact that plaintiff was not taken to the hospital immediately after the incident does not allow for dismissal. This is especially true given the allegation by plaintiff that he believed he would be killed if he left the monitored cell. In fact, he states that he wrote on the medical refusal form that he feared for his life. Response, D.E. 85 at 15. The motion is denied as to Defendants White, Alba, Chavis Green, and Mitchell.

Defendant Pickering is dismissed from the suit given there are no allegations against him as to these events. Response, D.E. at 4. Furthermore, plaintiff's later response that Pickering is one of the four officers involved in the incident is mistaken. According to the state's response to a prior court order, Pickering is an investigating officer, not one of the officers involved in the incident. D.E. 48. Likewise, Warden Branker is dismissed as a defendant from this claim. Liability under § 1983 must be based on more than merely the right to control employees. Polk Co. v. Dodson, 454 U.S. 312, 325–26 (1981); Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). Liability cannot be premised on mere allegations of respondeat superior. Iqbal, 556 U.S. at 676; Monell, 436 U.S. at 691; Polk, 454 U.S. at 325.

Supervisory liability under § 1983 is dependent upon a showing that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Id. at 799.

7

Actual or constructive knowledge is shown by: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Id. A pervasive and unreasonable risk of harm is established by evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id. No such showing has not been made here. Plaintiff arrived at Central Prison the day before the alleged incident. Thus, contrary to plaintiff's allegations, Branker could not have been aware of the incident. Plaintiff had not written to Branker prior to the incident. Branker is dismissed as a defendant to this claim.

    iii.    Excessive force

The Eighth Amendment protects inmates from cruel and unusual punishment. See Wilson v. Seiter, 501 U.S. 294, 298–99 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). To succeed on an excessive force claim under the Eighth Amendment, a prisoner must establish that "the officials act[ed] with a sufficiently culpable state of mind" and that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (alteration in original) (quotations omitted); see, e.g., Farmer v. Brennan, 511 U.S. 825, 834 (1994). "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (per curiam) (quotations omitted).

While plaintiff's complaint and filings are delusional at times, the core inquiry of Wilkins is certainly at issue here, "whether force was applied in a good-faith effort to maintain or restore

8

discipline, or maliciously and sadistically to cause harm." Id. Defendants assert that due to plaintiff's disruptive behavior and noncompliance, force was used to get plaintiff to comply with the orders. Mem. in Support, D.E. 79 citing Compl., attach., 4-14. Defendants contend that "[p]laintiff fails to mention or attribute with specificity any injury which Defendants caused, could have prevented, or had knowledge of." Id. Defendants rely on the argument that "the PLRA requires that a prisoner allege a physical injury in order to recover damages and provides that civil suits brought by prisoners for mental or emotional injury cannot be heard without a prior showing of physical injury" and that "plaintiff does not allege that he suffered any injury whatsoever as the result of Defendants' alleged actions " Mem. in Supp. at 10. However, from the filing before the court, plaintiff does contend he received injuries from the incident. Furthermore, under Supreme Court precedent the issue is not resolved by proof that "a certain quantum of injury was [not] sustained." Wilkins, 559 U.S. at 38. Likewise, plaintiff's statements that he kicked the officers does not preclude dismissal given he asserts he kicked the officers in defense of the assault by the four officers.

Again, at this juncture, material issues of both fact and law are in dispute as to officers Chavis, Green, Mitchell, and Moore. The motion is denied as to these defendants. No allegations are set out as to defendants Alba and White as to the assault itself, and they are dismissed as defendants to this claim. See 28 U.S.C. § 1915(e)(2)(B)(I) and (ii) (The court "**shall dismiss** the case **at any time** if the court determines that - the action . . . is frivolous . . . or fails to state a claim on which relief may be granted.").

Warden Branker and Officer Pickering are dismissed from suit for the reasons stated above. See supra, p. 6-7.

9

### iv. Qualified immunity

Alternatively, defendants assert they are entitled to qualified immunity. Mem. in Supp. Mot. to Dismiss, D.E. 79 at 10-11. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012); Brandon v. Holt, 469 U.S. 464, 472–73 (1985). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Reichle, 132 S. Ct. at 2093; Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012); Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011); Pearson v. Callahan, 555 U.S. 223, 231–32 (2009).

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Reichle, 132 S. Ct. at 2093; Pearson, 555 U.S. at 232; Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010); Unus v. Kane, 565 F.3d 103, 123 n.24 (4th Cir. 2009); Miller v. Prince George's Cnty., 475 F.3d 621, 626–27 (4th Cir. 2007). Courts have discretion about which question to address first. Pearson, 555 U.S. at 236. The court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Id. at 232. The court also must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing

10

violates that right." al-Kidd, 131 S. Ct. at 2083 (quotations omitted) (alterations in original). The United States Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id.; see Reichle, 132 S. Ct. at 2093. Thus, defendants are entitled to qualified immunity grounds if the answer to either question is "no." See, e.g., Reichle, 132 S. Ct. at 2093; al-Kidd, 131 S. Ct. at 2080; Miller, 475 F.3d at 627; Bostic v. Rodriguez, 667 F. Supp. 2d 591, 606 (E.D.N.C. 2009). Here, the record precludes a determination of qualified immunity at this time. On a more fully developed record, defendants may reassert this defense.

Motion for a Protective Order

Defendants object to plaintiff's request for discovery on several grounds, including the then pending motion to dismiss and the assertion of the defense of qualified immunity in the motion to dismiss. See Mem. Supp. Mot. Prot. Order, D.E. 91 at 4-5.

"[D]iscovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials." Herbert v. Lando, 441 U.S. 153, 177 (1979); see Hickman v. Taylor, 329 U.S. 495, 507 (1947). Additionally, "although a defendant asserting the affirmative defense of qualified immunity is entitled to a resolution of the defense prior to engaging in discovery, a plaintiff still may engage in discovery where he seeks discoverable evidence which could confirm or dispel the allegations in his complaint." Oxendine-Bey v. Bertie Corr. Inst., No. 5:10-CT-3140-FL, 2013 WL 4781020, at *1 (E.D.N.C. Sept. 5, 2013) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); McMillian v. Wake Cnty. Sheriff's Dep't, 399 F. App'x 824, 828–29 (4th Cir. 2010) (per curiam) (unpublished); Duffie v. Edwards, 67 F.3d 294 (table), 1995 WL 542352, at *1 (4th Cir. Sept. 13, 1995) (per curiam) (unpublished)).

11

A litigant may not use discovery to harass, annoy, embarrass, or oppress the opposing party, or to cause it undue burden or expense. See Fed. R. Civ. P. 26(c). Thus,

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

The court grants defendants' motion in part, and limits plaintiff's discovery requests to medical records and incident reports directly relevant to the May 11, 2010, incident at issue. The allowance of this limited discovery is done in an attempt to continue this case to a timely resolution and to focus plaintiff's filings on those non-delusional or fanciful claims presently before the court.

### Unserved defendant White

As stated in the first footnote, to facilitate service of defendants, the court requested the Attorney General, through DPS if necessary, to identify Captain White. Order, D.E. 47. The response stated that by using plaintiff's statement within his complaint "Captain White came to tell the plaintiff that he had several infractions against him, and one of these was a metal weapon," Pickering was identified as that investigator. In an abundance of caution, the court then served Pickering. However, no claim about Pickering's actions is now before the court, and Pickering has been dismissed. Moreover, plaintiff alleged that White threatened him folloiwng that assault causing him to refuse medical treatment.

12

Proper service of process (or waiver of service under Federal Rule of Civil Procedure 4(d)) is necessary for the court to exercise personal jurisdiction over a defendant. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time," unless the plaintiff can show good cause. Fed. R. Civ. P. 4(m). "Rule 4(m) requires the district court to 'extend the time for service to an appropriate period' if there is 'good cause' for not serving the defendant 'within 120 days after the complaint is filed.'" Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010) (quoting Fed. R. Civ. P. 4(m)). Moreover, 28 U.S.C. § 1915(d) "specifically vests the responsibility for service with the court and its officers." Jones v. Hashagen, 419 F. App'x 141, 145 (3d Cir. 2011) (per curiam) (unpublished); Olsen v. Mapes, 333 F.3d 1199, 1204 (10th Cir. 2003). Here, the court has fully discharged its duties under 28 U.S.C. § 1915(d). As noted, the court attempted to obtain both a name and address for service on behalf of plaintiff, and was unable to do so.

The court directs plaintiff to further identify defendant White and show good cause why defendant White should not be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m). The court informs plaintiff that, given the court's attempt to facilitate service on his behalf, his status as a pro se litigant will not satisfy good cause. Plaintiff shall be given until after he has received the allowed limited discovery to file his response in order to even further assist him n attempting to identify this defendant. His response must be filed on or before September 5, 2014. Plaintiff is hereby WARNED that if he fails to show good cause, the court will dismiss White without prejudice. See Tann v. Fisher, 276 F.R.D. 190, 195–96 (D. Md.

13

2011), aff'd, No. 11-2007, 2011 WL 6318570 (4th Cir. Dec. 19, 2011) (per curiam) (unpublished).

### Motion for Preliminary Injunction and a Temporary Restraining Order

Plaintiff seeks a temporary restraining order. Mot. for Preliminary Injunction and a Temporary Restraining Order, D.E. 97. The substantive standard for granting a temporary restraining order is the same as that for entering a preliminary injunction. See U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006). A court may grant a temporary restraining order or a preliminary injunction if the moving party demonstrates "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). In Winter, the Supreme Court rejected the "standard that allowed the plaintiff to demonstrate only a possibility of irreparable harm because that standard was inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009) (quotations omitted), vacated on other grounds, 130 S. Ct. 2371 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam). Sears has not established that he is likely to succeed on the merits, that he is likely to suffer irreparable harm absent injunctive relief, that the balance of equities tips in his favor, or that an injunction is in the public interest. The motion is DENIED. D.E. 97.

14

Case 5:12-ct-03078-BO   Document 99   Filed 07/15/14   Page 14 of 15

Conclusion

Having reviewed the Memorandum and Recommendation under the appropriate standard, the order is ADOPTED in FULL. D.E. 74. Thus, the requests for default are DENIED and the motion for an extension of time is ALLOWED. D.E. 54, 68, 70 and 73. The motions for leave to file excess pages are ALLOWED. D.E.84 and 94. The motion for a temporary restraining order is DENIED. D.E. 97. Defendants' motions to dismiss are DENIED in part and ALLOWED in part. D.E. 78 and 86. Defendants Branker and Pickering are DISMISSED from the entire suit. Defendants Alba and White are DISMISSED from the excessive force claim. The court GRANTS in part defendants' motion for a protective order [D.E. 91] and DIRECTS defendants to produce to plaintiff all medical records and incident reports relevant to the May 11, 2010, incident or before August 22, 2014, and to file a certificate of service with the court. Plaintiff is ALLOWED until September 5, 2014, to file a response with the court regarding White in an attempt to perfect service and proceed on the sole remaining claim against him. Defendants are given until September 15, 2014, to file any additional dispostive motions. Plaintiff shall be given 14 days thereafter to respond.

SO ORDERED, this the 14 day of July 2014.

TERRENCE W. BOYLE
United States District Judge